# EXHIBIT B

Insurance Commissioner
ACCEPTED SOP

FEB 09 2026

TIME: 2 pm

EFILED
Clerk Billie Maggard
2/5/2026 8:30 AM
Superior Court Yakima County, WA

SUPERIOR COURT, STATE OF WASHINGTON
COUNTY OF YAKIMA

NORTHWEST RESTORATION OPERATING, INC., a Washington corporation,

Plaintiff,

vs.

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, a foreign insurance company,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 26-2-00418-39

COMPLAINT

*Filing Fee: $290.00*

Plaintiff Northwest Restoration Operating, Inc., by and through its attorney of record, William Gieri of Campbell & Bissell, PLLC, hereby alleges as follows:

## I.    PARTIES, JURISDICTION, AND VENUE

1.    At all times material, Northwest Restoration Operating, Inc. ("Northwest") was a corporation authorized to transact business in Washington with its principal place of business located in Spokane County, Washington. Northwest has performed all obligations and conditions required of it to commence and maintain this lawsuit.

COMPLAINT - 1

**CB | LAWYERS**
CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100

2.      Upon information and belief, The Travelers Home and Marine Insurance Company ("Travelers") provides property insurance to homeowners across the United States. Upon information and belief, Travelers' principal office is not located within Washington State. Travelers provided property insurance for the real property located at 512 N. 61st Avenue, Yakima, WA 98908 ("Property") under insurance policy number 0HH397985405440633-1 ("Policy"). Upon information and belief, Travelers has provided and continues to provide property insurance for individuals and entities in Washington.

3.      Venue and jurisdiction are proper in this Court pursuant to RCW §§ 2.08.010, 48.30.015(1), and 48.05.220.

## II.      FACTS

**A.      Commencement of the Loss**

4.      On or about July 23, 2025, a water loss occurred at the Property, causing damage to various rooms. ("the Loss").

5.      After the Loss commenced, the owner (Priscilla Thompson) of the Property filed an insurance claim with Travelers. Travelers assigned Claim No. JAQ0969001H ("Claim") to the Loss.

6.      While Travelers was notified of the Loss on or about July 23, 2025, it did not perform any onsite inspection until August 5, 2025 – 13 days after the Loss – and did not provide written approval of coverage until August 7, 2025 – 15 days after the Loss.

7.      Subsequent to the Loss, the owner entered into a document entitled "Agreement to Perform Services Contract" ("Contract") with Northwest.

COMPLAINT - 2

**CB | LAWYERS**
CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100

8. Pursuant to the Contract, the owner expressly provided Northwest with permission to "dehumidify, cleanse, decontaminate, deodorize, disinfect (*e.g.*, media blast), fumigate, purify, antisepticise, sterilize, and perform any other work to remedy the damage at the premises, including testing for lead, asbestos, particular categories of water damage, and microbial growth (such as mold) and removing specific components (*e.g.*, drywall, flooring, trim) of property impacted by the damage."

9. The owner also assigned to Northwest "any and all insurance rights (including statutory and regulatory), benefits, proceeds, and causes of action arising out of or relating to any applicable insurance policies and insurance claims" which pertain to Northwest's services ("Assignment").

10. Based on the Assignment, which Travelers recognizes, Northwest became the first-party claimant pursuant to RCW 48.30.015(4).

**B. Services Performed After Commencement of the Loss**

11. After the Loss commenced, Northwest utilized stabilization equipment to prevent the Property from suffering further damage as a result of the Loss.

12. Upon information and belief, the Policy contains a requirement that the insured cooperate with Travelers throughout the investigation of the Loss.

13. Upon information and belief, the Policy contains a requirement that the insured prevent the Property from suffering further damage as a result of a covered loss.

14. Under applicable law, Travelers has an obligation to perform a reasonable investigation of the Loss and timely render a coverage decision.

COMPLAINT - 3

**CB | LAWYERS**
CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7ᵗʰ Avenue
Spokane, WA 99204
509.455.7100

15.    As indicated above, Northwest utilized stabilization equipment to prevent the Property from suffering further damage as a result of the Loss. Specifically, Northwest set equipment on July 23, 2025 – the day it was retained for the emergency.

16.    Due to a concern that Travelers had not issued a coverage decision at the time Northwest set its stabilization equipment, the homeowner requested that no materials of the Property be removed until after Travelers provides a coverage decision.

17.    On July 24, 2025, an employee of Northwest contacted Travelers, notifying Travelers that it had set stabilization equipment and that it would not proceed with any demolition until Travelers provides written confirmation of coverage.

18.    As of July 28, 2025, Northwest had not received a response from Travelers. This resulted in another employee of Northwest contacting Travelers to notify Travelers that stabilization equipment had been set but demolition would not proceed until receipt of Travelers' written coverage decision.

19.    On August 7, 2025, Travelers, through its adjuster Andrew Kelly, issued a written coverage decision, stating in pertinent part that "[c]overed is confirmed for the water loss from a toilet crack."

20.    At the time Travelers provided a written coverage decision, 15 days had elapsed from the date that Northwest placed its stabilization equipment.

21.    After Travelers finally issued a written coverage determination, Northwest proceeded with its services. Before removing particular components within the Property, however, it needed to wait on receipt of asbestos results.

COMPLAINT - 4

CB | LAWYERS
CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W 7ᵗʰ Avenue
Spokane, WA 99204
509.455.7100

22.    Northwest received the asbestos results on August 12, 2025, resulting in stabilization equipment having remained at the Property for 20 days as a result of Travelers' delays and the wait in receiving asbestos results.

23.    Once Northwest received the asbestos results, it was able to proceed with its services, including the demolition of particular building components while also attempting to dry materials. In this regard, after the vinyl within the bathroom was removed, it took the subfloor another 5 days to meet its dry standard.

24.    Based on Travelers' delay in combination with the time it took to receive the asbestos results and for the subfloor to reach dry standard, 25 days had elapsed, exclusive of the other services required before the vinyl could be removed so the subfloor could be dried.

25.    After Northwest completed its services, it issued its invoice to Travelers. On September 25, 2025, Travelers notified Northwest that the Claim had been reassigned.

C.    Travelers' (Unreasonable) Denial of Benefits

26.    On September 25, 2025, the new adjuster for Travelers – Aurianna Carrillo – notified Northwest that she had been assigned for the Claim and that she would review the Claim after making contact with the homeowner.

27.    On October 9, 2025, Travelers – through Ms. Carrillo – notified Northwest that "[t]he claim has been closed due to several failed contact attempts with the insured. The claim cannot be reviewed until contact is made. Please have the insured contact me at the number provided in my signature block." ("October 9 Communication")

28.    The October 9 Communication is a microcosm of Travelers' unreasonable actions on this Claim. Specifically, irrespective of whether Ms. Carrillo was able to make contact with

COMPLAINT - 5

**CB | LAWYERS**
CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100

the homeowner, Travelers had already approved of coverage – after its 15-day delay – and, accordingly, had an obligation to issue payment for the services required to handle the Loss.

29.    In spite of Travelers' obligation to issue payment for the services required to handle the Loss, Ms. Carrillo denied any and all benefits as she closed the Claim.

30.    On October 13, 2025, Travelers re-opened the Claim. On October 24, 2025, Travelers, through Ms. Carrillo, stated that the Claim is being reviewed – which could have and should have been done earlier – and would provide an update sometime the following week. In the same communication, Travelers recognized that it had caused a delay in the handling of the Claim.

31.    On November 4, 2025, Travelers issued an estimate wherein it denied payment of benefits for several services. Of glaring importance, Travelers only allocated payment for 5 days (which it increased to 7 days) for Northwest's dehumidifier and air filtration device in spite of the fact that Travelers was primarily the cause of this equipment remaining at the Property for much longer – as mentioned above, it took 15 days for Travelers to even issue a written coverage decision.

32.    To compound Travelers' position regarding the dehumidifier and air filtration device, Travelers – through Ms. Carrillo – stated that the "equipment should have been removed pending approval for floor removal[.]" Travelers' determination is contrary to industry standards.

33.    Had Northwest not placed stabilization equipment while pending a written coverage decision from Travelers (while also allowing Travelers the ability to fulfill its legal obligation of performing a reasonable investigation), but rather removed equipment (or not placed it) while pending Travelers' written coverage decision for 15 days, secondary damage would have

COMPLAINT - 6

**CB | LAWYERS**
CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W 7ᵗʰ Avenue
Spokane, WA 99204
509.455.7100

occurred, resulting in Travelers excluding coverage for the secondary damage. Travelers' position also contradicts the Policy, which requires stabilization, and is an attempt to nullify its obligation to perform a reasonable and prompt investigation and timely issue a coverage decision.

34.    In addition to Travelers' unreasonable denial of benefits as to the stabilization equipment, Travelers also (unreasonably) denied payment of benefits for:

    a.    Emergency Service Call During Normal Business Hours.

    b.    Equipment setup, monitoring & takedown. Travelers denied payment for 19 hours.

    c.    The full quantity for tear-out of the vinyl within the bathroom.

    d.    The full time required for air movers.

35.    As to the emergency service call, Travelers denied payment, contending that the charge is not warranted because it is a "[s]tandard business operation[.]" However, as Travelers is aware, reallocating resources to respond to a new loss is a cost that the insured will incur, and all services, such as monitoring equipment, performed by Northwest are considered a "standard business operation" for which Travelers issues payment. Moreover, and among other things, on other projects, Travelers has paid Northwest for this service item, demonstrating that even Travelers understands that it must pay for this service.

36.    For the emergency setup, monitoring, and takedown service, Travelers (unreasonably) denied payment for 19 hours. Travelers' denial is predicated upon its determination – as already explained above – that stabilization equipment should not have been utilized while pending a written coverage determination, and that the Property should have instead been exposed to secondary damage.

COMPLAINT - 7

**CB** | LAWYERS

CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100

37.    Along with the foregoing denials, Travelers also denied payment for particular unit prices of services.

38.    To further exacerbate matters for Travelers, it denied payment of benefits for Northwest's installation of containment, claiming that it was unnecessary for the Loss. However, Travelers was aware that the Loss consisted of contamination, thus requiring the installation of containment, otherwise contaminants would be spread to other areas of the Property – *e.g.*, Travelers issued payment for air movers, and absent containment, the air movers would have spread contaminants to otherwise unaffected areas of the Property.

39.    In spite of Northwest's efforts to educate Travelers, Travelers did not change its position (and ignored pertinent communications) with respect to the foregoing services, prompting Northwest to serve its Insurance Fair Conduct Act letter on Travelers ("IFCA Letter").

40.    Within the IFCA Letter, Northwest demanded Travelers to provide the applicable policy for the Claim. Travelers failed to do as much, let alone provide any response to the IFCA Letter.

### III.    CAUSES OF ACTION
**(First and Second Causes of Action – Breach of Contract and Bad Faith)**

44.    Northwest realleges and incorporates the foregoing paragraphs.

45.    The insurance policy is a valid and enforceable contract and contains payment obligations, to which Northwest received an assignment of the rights therein with respect to its services.

46.    Travelers breached the applicable policy when it failed to issue payment in full for Northwest's services. Travelers acted in bad faith as it unreasonably denied payment for Northwest's services based on, among other things, unreasonable determinations.

COMPLAINT - 8

**CB | LAWYERS**
CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100

47.    The breach and bad faith have each caused damages in a principal amount to be proven at trial.

**(Third Cause of Action – Consumer Protection Act)**

48.    Northwest realleges and incorporates the foregoing applicable paragraphs.

49.    Travelers' acts or practices violated the Consumer Protection Act, RCW § 19.86 *et seq.*

50.    Travelers' acts or practices were unfair and/or deceptive. For example, Travelers:

a.    failed to perform a reasonable and timely investigation;

b.    required Northwest to initiate litigation to recover amounts due under the applicable policy;

c.    failed to produce the applicable policy;

d.    misrepresented pertinent facts regarding the Loss; and

e.    failed to attempt in good faith to effectuate settlement when liability had become reasonably clear.

51.    Travelers' acts or practices constitute a violation of WAC § 284-30-330(1), which constitutes a *per se* unfair or deceptive act or practice under the Consumer Protection Act and is evidence of a Consumer Protection Act violation.

52.    Travelers' acts or practices constitute a violation of WAC § 284-30-330(4), which constitutes a *per se* unfair or deceptive act or practice under the Consumer Protection Act and is evidence of a Consumer Protection Act violation.

COMPLAINT - 9

CB | LAWYERS
CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W 7th Avenue
Spokane, WA 99204
509.455.7100

53.     Travelers' acts or practices constitute a violation of WAC § 284-30-330(6), which constitutes a *per se* unfair or deceptive act or practice under the Consumer Protection Act and is evidence of a Consumer Protection Act violation.

54.     Travelers' acts or practices constitute a violation of WAC § 284-30-330(7), which constitutes a *per se* unfair or deceptive act or practice under the Consumer Protection Act and is evidence of a Consumer Protection Act violation.

55.     Travelers' acts or practices constitute a violation of WAC § 284-30-350(1), which constitutes a *per se* unfair or deceptive act or practice under the Consumer Protection Act and is evidence of a Consumer Protection Act violation.

56.     Travelers' acts or practices occurred in trade or commerce.

57.     Travelers' acts or practices impact the public interest.

58.     Travelers' unfair or deceptive acts or practices have caused injury in an amount to be proven at trial.

**(Fourth Cause of Action – Insurance Fair Conduct Act)**

59.     Northwest realleges and incorporates the foregoing applicable paragraphs.

60.     By letter dated December 31, 2025, Northwest provided written notice of the basis for its cause of action against Travelers under the Insurance Fair Conduct Act to the Office of the Washington State Insurance Commissioner and to Travelers, as provided by RCW § 48.30.015(8).

61.     Travelers failed to resolve the basis for this cause of action within the time prescribed by RCW § 48.30.015(8)(b).

62.     Travelers' acts and omissions, as alleged above, violated the Insurance Fair Conduct Act, as it has, among other things, unreasonably denied payment of benefits.

COMPLAINT - 10

CB | LAWYERS

CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7ᵗʰ Avenue
Spokane, WA 99204
509.455.7100

63.     Northwest is entitled to damages in an amount to be proven at trial.

## IV.     PRAYER FOR RELIEF

1.     For judgment against Travelers in favor of Northwest in an amount to be proven at trial;

2.     For an award of Northwest's attorney's fees and costs pursuant to RCW §§ 19.86.090, 48.30.015(1), and any other applicable law;

3.     For an award of prejudgment interest and post-judgment interest;

4.     For an award of treble damages against Travelers pursuant to RCW § 19.86.090 and 48.30.015(2); and

5.     For such other and further relief as the Court deems just and equitable.

DATED this _4th_ day of February 2026.

CAMPBELL & BISSELL, PLLC

WILLIAM GIERI, WSBA #52761
Attorney for Plaintiff

COMPLAINT - 11

**CB | LAWYERS**
CAMPBELL & BISSELL | PLLC
Corbet-Aspray House
820 W. 7th Avenue
Spokane, WA 99204
509.455.7100